# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
information associated with cell phone account (703) 309-2130 that is stored at premises controlled by Verizon Wireless

Case No. 1:17-sw-175

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute heroin |

The application is based on these facts:
See attached affidavit of Donald August Mockenhaupt, FBI Special Agent.

☑ Continued on the attached sheet.
☑ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Donald August Mockenhaupt, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/04/2017

City and state: Alexandria, Virginia

/s/ John F. Anderson
~~United States Magistrate Judge~~
*Judge's signature*

The Honorable John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the account for cell phone number **(703) 309-2130** that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from February 1, 2016, to present;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service

utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

  f. Detailed billing records, showing all billable calls including outgoing digits, from February 1, 2016, to present;

  g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from February 1, 2016, to present;

  h. Incoming and outgoing telephone numbers, from February 1, 2016, to present;

  i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

  j. All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

**II.** **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same), involving the individual using **(703) 309-2130** since February 1, 2016, to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

  a. Communications and information about, involving, or related to drug customers and related identifying information; the types, amounts, and prices of drugs trafficked, as well as

2

dates, places, and amounts of specific transactions; sources of drugs (including names, addresses, phone numbers, or any other identifying information); the disposition or location of proceeds from drug sales and assets used in furtherance of drug sales; and

  b.  Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | (UNDER SEAL) |
| INFORMATION ASSOCIATED WITH ) | |
| CELL PHONE ACCOUNT **(703) 309-2130** ) | Case No. 1:17-sw-175 |
| THAT IS STORED AT PREMISES ) | |
| CONTROLLED BY VERIZON WIRELESS ) | |

APR - 4 2017

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Donald August Mockenhaupt, being first duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since 2002. As an FBI Special Agent, I have participated in narcotics investigations that have resulted in the arrest and conviction of drug traffickers and the seizure of illegal narcotics. Based on my training and experience, I know that it is common for individuals engaged in the distribution of illegal narcotics to use cellular telephones to communicate with their customers

and sources of supply. Based on my training and experience, I also know that individuals engaged in the distribution of illegal narcotics exchange information with their customers and sources of supply through text messaging and instant messaging, in addition to direct telephone conversations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Mark O'DELL, who is the user of **(703) 309-2130** (hereinafter, "the SUBJECT TELEPHONE NUMBER"), and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. The FBI and the Arlington County Police Department (ACPD) are investigating a heroin conspiracy operating in the Eastern District of Virginia and elsewhere.

6. In December 2016, the ACPD arrested a member of the conspiracy, who agreed to cooperate with the investigation (hereinafter, "Cooperating Defendant 1" or "CD-1"). For purposes of this affidavit, CD-1 will be referred to using masculine pronouns, regardless of whether CD-1 is male or female.

7. CD-1 is a heroin user who is currently seeking medical treatment for his heroin abuse. CD-1 has multiple arrests and convictions for various offenses, including unlawful possession of a firearm by a felon, burglary, grand larceny, credit card larceny, driving under the

influence (DUI), and making false statements to a peace officer. CD-1 has pending charges at the state level for distribution of heroin and hit-and-run (vehicle damage). After consulting with counsel, CD-1 has signed a plea agreement and statement of facts with the U.S. Attorney's Office in the Eastern District of Virginia in which he acknowledges that he is guilty of distributing 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Much of the information provided by CD-1 has been corroborated by controlled buys, physical surveillance, data downloaded from seized telephones, and call detail records.

8. Following his arrest, CD-1 told investigators that he has a heroin supplier who resides in and around Baltimore, Maryland. Investigators have identified CD-1's supplier as Kamuri Valonte Leak (a/k/a "Kiz Miz," "K," "Kiz," and "Kizzle"). CD-1 told investigators that he routinely travels to Baltimore to purchase 10-50 grams of heroin from Leak, and that the most he has ever purchased from Leak at one time was approximately 100 grams of heroin. CD-1 identified Leak's cellular telephone number, which was stored in his telephone under the name, "Kiz Miz." CD-1 also told investigators that Leak has another customer named "Mark." Based on his conversations with Leak, CD-1 believes that "Mark" is an older white male.

9. Following his arrest, CD-1 also identified one of his co-conspirators who helps him distribute heroin in the Eastern District of Virginia (hereinafter, "Unindicted Co-Conspirator 1" or "UCC-1"). For purposes of this affidavit, UCC-1 will be referred to using masculine pronouns, regardless of whether UCC-1 is male or female.

10. In January 2017, UCC-1 consented to a voluntary interview with investigators. During the interview, UCC-1 admitted that he and CD-1 traveled to Baltimore to obtain heroin from a supplier, who CD-1 referred to as "K." In addition, during his interview, UCC-1 identified a photograph of Mark O'DELL as a person he knows as "Mark." O'DELL is a white

3

male, who is approximately 56 years old. UCC-1 told investigators that he met O'DELL at a methadone clinic. In 2013, law enforcement officers interviewed O'DELL as part of a separate investigation. During his interview, O'DELL provided the SUBJECT TELEPHONE NUMBER as his cellular telephone number.

11. Following UCC-1's interview, investigators obtained a search warrant and searched UCC-1's cellular telephone. UCC-1's cellular telephone contained text messages about "Mark." For example, on November 11, 2016, there was a text message from CD-1's cellular telephone to UCC-1's cellular telephone that read:

> He did tell me 100 per, last we talked. If it's what Mark always got, then there's money to be made for sure. (I also have been figuring how to tie it into the Airbnb thing....we'll talk).

Based on my training, experience, and knowledge of this investigation, I believe that CD-1 was referring to obtaining heroin at $100 per gram, and that CD-1 told UCC-1 that "Mark" obtained heroin for that same price.

12. Moreover, on November 16, 2016, UCC-1's cellular telephone had the following text message exchange with Leak's telephone number:

| Leak: | 7033092130 mark |
| UCC-1: | Thank you very much |
| Leak: | Your welcome how was it |
| UCC-1: | (7.5/10 but I will try later when the blocker wears out) |

Based on my training, experience, and knowledge of this investigation, I believe that Leak sent O'DELL's telephone number to UCC-1, likely at UCC-1's request. I believe that Leak asked about the quality of heroin that he had previously sold to UCC-1, and that UCC-1 rated the

4

heroin as 7.5 out of 10. I also believe that UCC-1 told Leak that he would test the heroin again after his opiate blocker wore off.

13. After UCC-1 obtained O'DELL's cellular telephone number from Leak, UCC-1's cellular telephone had numerous text message exchanges with the SUBJECT TELEPHONE NUMBER. For example, on December 15, 2016, UCC-1 and O'DELL had the following text message exchange:

> O'DELL: You need anything from the top I'm landing in Baltimore Kiz is meeting me&11
>
> UCC-1: Hey there! Nice video, this time I'll save that picture so it pops up when you call me
>
> UCC-1: I plan on working on your stuff tod
>
> UCC-1: I'm absolutely broke until I get paid, besides I'm still sick with some sort of stomache flu, thank you for asking

Based on my training, experience, and knowledge of this investigation, I believe that O'DELL informed UCC-1 that he was planning on traveling to Baltimore to meet with Leak, who O'DELL referred to as "Kiz," and O'DELL asked UCC-1 if he (UCC-1) wanted any heroin. I further believe that UCC-1 replied to O'DELL that he did not have any money for heroin.

14. On February 1, 2017, I sent a preservation letter to Verizon Wireless, requesting that Verizon Wireless preserve any and all records, including text message content, for the SUBJECT TELEPHONE NUMBER.

15. On February 22, 2017, CD-1, acting under the supervision and control of law enforcement, purchased approximately 10 grams of heroin from Leak for $1,000 dollars. The transaction took place in and around Baltimore, Maryland.

16. On March 3, 2017, CD-1, acting under the supervision and control of law enforcement, purchased approximately 28.2 grams of heroin from Leak for $2,740 dollars. The transaction took place in and around Baltimore, Maryland.

17. I have reviewed the call detail records for the SUBJECT TELEPHONE NUMBER for the period from October 1, 2016 through January 6, 2017. During that period, the SUBJECT TELEPHONE NUMBER had over 500 text message exchanges with Leak's cellular telephone. I then reviewed the call detail records for Leak's cellular telephone for the period from January 7, 2017 to February 22, 2017. During that period, the SUBJECT TELEPHONE NUMBER had approximately 400 text message exchanges with Leak's cellular telephone. In total, from October 1, 2016 to February 22, 2017, the SUBJECT TELEPHONE NUMBER and LEAK's cellular telephone exchanged approximately 900 text messages.

18. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

19. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Verizon Wireless for weeks or months.

20. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one

subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

21.   Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

22.   Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

23. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

24. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

25. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

26. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

27. Based on the foregoing, I request that the Court issue the proposed search warrant.

28. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

29. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## **REQUEST FOR SEALING**

30.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Donald August Mockenhaupt
Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED Before me this 4th day of April, 2017.

_____/s/_____
John F. Anderson
United States Magistrate Judge

Honorable John F. Anderson
United States Magistrate Judge

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the account for cell phone number **(703) 309-2130** that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from February 1, 2016, to present;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service

utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f. Detailed billing records, showing all billable calls including outgoing digits, from February 1, 2016, to present;

g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from February 1, 2016, to present;

h. Incoming and outgoing telephone numbers, from February 1, 2016, to present;

i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j. All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same), involving the individual using **(703) 309-2130** since February 1, 2016, to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Communications and information about, involving, or related to drug customers and related identifying information; the types, amounts, and prices of drugs trafficked, as well as

2

dates, places, and amounts of specific transactions; sources of drugs (including names, addresses, phone numbers, or any other identifying information); the disposition or location of proceeds from drug sales and assets used in furtherance of drug sales; and

    b.    Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.